UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ROBERTA FITTERS, | : | Case No. 1:19-cv-1032 |
| Plaintiff, | : | |
| | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| DENIS MCDONOUGH, Secretary of Veterans Affairs, | : | |
| | : | |
| Defendant. | : | |

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**(Doc. 30)**

This civil case is before the Court on Defendant Secretary of Veterans Affairs Denis McDonough's motion for summary judgment (Doc. 30) and the parties' responsive memoranda (Docs. 42, 43).

## I. BACKGROUND

**A. Factual Background**[1]

Veterans Canteen Service ("VCS") is a system of cafes, retail stores, coffee shops, 24-hour vending outlets, and a variety of other services in Veterans Affairs hospitals, including the Cincinnati VA Medical Center. (Doc. 30-1 at ¶ 1). Plaintiff Roberta Fitters ("Plaintiff") was hired as a VCS employee for the Cincinnati Canteen in March of 2008. (*Id.* at ¶ 3). At all times relevant, Plaintiff was Assistant Canteen Chief of the Cincinnati

---

[1] Pursuant to the Court's Standing Order, Defendant filed Proposed Undisputed Facts (Doc. 30-1) and Plaintiff filed a Response to Defendant's Proposed Undisputed Facts and Disputed Issues of Material Fact (Doc. 42-1). The Court's statement of facts set forth in this Order incorporates the material facts undisputed by the parties.

Canteen. (*Id.* at ¶ 18). Plaintiff's first-level supervisor and Canteen Chief was Robert Polce ("Polce"). (*Id.* at ¶ 5).

On July 24, 2018, Plaintiff was issued a proposed removal from the position of Assistant Canteen Chief (the "Proposed Removal Letter"). (*Id.* at ¶ 52). The Proposed Removal Letter was signed by Regional Manager DeWayne Hamlin ("Hamlin"), Plaintiff's second-level supervisor. (Doc. 29-3 at 2; Doc. 30-1 at ¶ 15). Renee Claypool ("Claypool"), the Associate Director of VCS Operations, removed Plaintiff from her employment effective August 6, 2018. (Doc. 30-1 at ¶ 54). And James Leahy ("Leahy"), Executive Director of VCS, approved the removal. (Doc. 42 at 11; Doc. 43 at 5).

The grounds for the proposed removal were the following charges: (1) violation of internal security and controls; and (2) failure to maintain and/or conduct proper canteen management oversight. (Doc. 30-1 at ¶¶ 52, 53).

The Proposed Removal Letter provided two "specifications" for the first charge:

> **Specification 1:** On May 18, 2018, while reviewing video surveillance in connection with an investigation into unusual refund activities, [Hamlin] discovered that from the period of March 5, 2018 through May 14, 2018, [Plaintiff] left the cash unsecured in the Canteen Office and Retail Store and left the store to go somewhere in the Medical Center. [Plaintiff's] failure to ensure compliance with the internal security & controls left the VCS highly vulnerable to cash losses and show a serious breach of [Plaintiff's] duties.
>
> **Specification 2:** A review of the Video surveillance for internal security reasons revealed that on May 5, 2018, [Plaintiff] left the canteen office without properly securing the safe door. [Plaintiff's] failure to ensure compliance with the internal security & controls left the VCS highly vulnerable to cash losses and show a serious breach of [Plaintiff's] duties.

2

(Doc. 29-3 at 1). The Proposed Removal Letter provided one "specification" for the second charge:

> **Specification:** A site visit of the Cincinnati, VCS #539 conducted on June 22, 2018, identified a number of operational discrepancies that required [Plaintiff's] immediate attention. Despite the recommendations made to [Plaintiff], on July 8, 2018, Acting Chief, Michelle Florida discovered [Plaintiff] had not corrected or improved many of the operational deficiencies previously addressed. [Plaintiff's] negligent behavior regarding proper retail oversight has affected the efficiency of the canteen and does not support the mission of the VCS.

(*Id.*)[2] The Proposed Removal Letter also stated that Plaintiff's previous disciplinary record would be taken into consideration, referencing a reprimand letter dated April 5, 2017 (the "Reprimand Letter"). (*Id.* at 1). Plaintiff, however, disputes that she received the Reprimand Letter and that Canteen Chief Polce, its purported author, drafted it. (Doc. 42-1 at ¶¶ 8, 9).

Plaintiff was 66 years-old when she was terminated on August 6, 2018. (Doc. 30-1 at ¶¶ 18, 54). In February of 2019, Plaintiff's former position of Assistant Canteen Chief was filled by Douglas Pietsch ("Pietsch"), who was 50 years-old at the time. (*Id.* at ¶ 58).

### B. Procedural Posture

Plaintiff contacted the Equal Employment Opportunity ("EEO") counselor on August 10, 2018 and filed an EEO complaint on November 8, 2018. (*Id.* at ¶ 59). In it, Plaintiff alleged she was discriminated against based upon her age. (*Id.*) Instead of a

---

[2] Michelle Florida briefly served as Acting Canteen Chief for the Cincinnati Canteen while Polce was on medical leave.

3

hearing, Plaintiff requested a Final Agency Decision from the VA Office of Employment Discrimination Complaint Adjudication. (*Id.* at ¶ 60). On October 10, 2019, Plaintiff received a Final Agency Determination that found "the agency [had met] its burden of articulating [] [*sic*] legitimate, nondiscriminatory reasons for subjecting [Plaintiff] to the action referenced in the above claim" and that "the record . . . [did] not show that the action occurred due to age-based discrimination[.]" (*Id.* at ¶ 61). Plaintiff filed a complaint in this Court on December 5, 2019, alleging one cause of action for age discrimination under the Age Discrimination and Employment Act ("ADEA"). (Doc. 1).

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.4S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

## III. ANALYSIS

The ADEA prohibits an employer from failing to hire, discharging, or discriminating against an individual with respect to her compensation or terms, conditions, or privileges of employment because of her age. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (citing 29 U.S.C. § 623(a)(1)). A plaintiff may establish a violation of the ADEA by either direct or circumstantial evidence. *Id.* Direct evidence is evidence, which, if believed, would require the conclusion that unlawful discrimination was at least a motivating factor. If a plaintiff does not have direct evidence of age discrimination, the age discrimination claim is analyzed using the *McDonnell Douglas* burden-shifting framework. *Id.* The ultimate question in any age discrimination claim under the ADEA is whether age was a determining factor in the adverse employment action. *Pastura v. CVS Caremark*, 2012 WL 6738660, at *7 (S.D. Ohio Dec. 31, 2012).

The first step of the *McDonnell Douglas* burden-shifting framework requires the plaintiff to make out a *prima facie* case of discrimination. In order to make a *prima facie* case, the plaintiff must establish the following elements: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002). In the case of age discrimination, the "protected group" is persons over the age of 40.

One way to establish the fourth element of a *prima facie* case of age discrimination is to show that the plaintiff was replaced by a substantially younger person. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521-22 (6th Cir. 2008). The

5

other is to show that the plaintiff was treated differently than similarly-situated, non-protected employees. *Id.*

If the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to identify a legitimate, non-discriminatory reason for the adverse employment decision. *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008). If the employer meets this burden of production, then the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate, non-discriminatory reason given is a pretext for discrimination. *Id.* Nevertheless, the overall burden of persuasion remains with the plaintiff at all times. *Id.*

### A. *Prima facie* case

It is undisputed that Plaintiff was over the age of 40 (she was 66 years-old) when she was terminated on August 6, 2018. (Doc. 30-1 at ¶¶ 18, 54). It is also undisputed that Plaintiff was qualified for her position. (Doc. 30 at 7). Accordingly, the Court will address the fourth prong of the *prima facie* test—whether Plaintiff has established circumstances that support an inference of discrimination.[3]

Defendant contends that Plaintiff cannot present a *prima facie* case of age discrimination because "Plaintiff cannot show that she was replaced by a substantially younger employee." (*Id.* at 8). Plaintiff was replaced by Douglas Pietsch, who was 50 years-old when he assumed the position of Assistant Canteen Chief. (Doc. 30-1 at ¶ 58). Plaintiff was 66 years-old when she was terminated. (Doc. 42-1 at ¶ 18; Doc. 41-1 at

---

[3] Plaintiff failed to offer any direct evidence of age discrimination, so she must produce circumstantial evidence of discrimination to survive summary judgment.

¶ 1). Typically, courts consider an age difference of ten years or more to be substantial. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003); *see also O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) ("Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class."). Plaintiff was 16 years older than her replacement, and thus was replaced by a "substantially younger" person. Accordingly, material issues of fact preclude denial of the *prima facie* case.

The Court finds that Plaintiff has established sufficient facts to make out a *prima facie* case of age discrimination.

### B. Legitimate non-discriminatory reason

Next, the burden shifts to the Defendant to articulate a legitimate, non-discriminatory reason for the adverse employment decision. *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 377 (6th Cir. 2002). Defendant maintains that it terminated Plaintiff because of her "failure to follow VCS policies regarding asset protection and her failure to adhere to retail operation policies." (Doc. 30 at 8). These reasons were documented by Defendant in the Proposed Removal Letter to Plaintiff dated July 24, 2018 (Doc. 29-3), and in a removal decision letter to Plaintiff dated August 3, 2018 (Doc. 29-8). As such, Defendant has clearly put forward a legitimate, non-discriminatory reason for Plaintiff's termination.

### C. Pretext

Finally, the burden returns to Plaintiff who, to survive summary judgment, must "produce sufficient evidence from which a jury could reasonably reject [Defendant's] explanation of why it fired her." *Miles v. South Central Human Resource Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020) (quoting *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). "This is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Id.* (quotations omitted). "And ultimately, this burden merges with [Plaintiff's] overall burden of proving discrimination." *Id.* (citing *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011)).

Plaintiffs typically show pretext in one of three ways: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that the proffered reasons were insufficient to motivate the employer's action." *Miles*, 946 F.3d at 888 (quoting *Chen*, 580 F.3d at 400). "But these are not the only ways that a plaintiff can establish pretext; these three categories are simply a 'convenient way of marshalling evidence and focusing it on the ultimate inquiry: did the employer fire the employee for the stated reason or not?'" *Id.* (quoting *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012)).

"At this stage of the *McDonnell Douglas* burden-shifting framework, we examine all evidence that the plaintiff has put forth—evidence from the *prima facie* stage, 'evidence discrediting the defendant's proffered reason,' and 'any additional evidence the plaintiff chooses to put forth.'" *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 810 (6th Cir. 2020) (quoting *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 532 (6th Cir. 2007)). The

8

Court "consider[s] all evidence in the light most favorable to the plaintiff, including the evidence presented at the *prima facie* stage." *Willard*, 952 F.3d at 810 (quoting *Provenzano*, 663 F.3d at 812). In order "to survive summary judgment, a plaintiff need only produce enough evidence to . . . rebut, not disprove, the defendant's proffered rationale." *Willard*, 952 F.3d at 810 (quoting *Blair*, 505 F.3d at 532).

Here, Plaintiff offers: (1) evidence that rebuts Defendant's proffered reasons; and (2) additional evidence tending to show that Defendant's reasons were pretextual. As discussed in further detail below, the Court finds that Plaintiff has presented sufficient evidence of pretext to survive summary judgment.

### 1. *Reason 1: Failure to follow VCS policies regarding asset protection*

Plaintiff argues that Defendant's first proffered reason—that Plaintiff failed to follow VCS policies regarding asset protection—was insufficient to warrant her termination and did not actually motivate Defendant's decision to terminate her employment. (Doc. 42 at 7-9).

According to the Proposed Removal Letter, Defendant's basis for this first charge was video surveillance of Plaintiff leaving cash unsecured in the canteen office and leaving the canteen office without properly securing the safe door. (Doc. 29-3 at 1). But Plaintiff argues that her conduct in the video footage was compliant with the cash handling policies set by Polce in his capacity as Canteen Chief of Cincinnati, and Polce attested to the same. (Doc. 42 at 7; Doc. 26 at 117-21; Doc. 41-2 at ¶ 3). Indeed, in his deposition, Executive Director Leahy confirmed that Polce, as Canteen Chief, had discretion to make cash handling policies that worked for the Cincinnati location.

9

(Doc. 39 at 23-25).

This first charge was also based, in part, on Hamlin's statement that he reviewed 70 days of video surveillance on May 18, 2018, during which he claims to have observed related infractions occur. (Doc. 29-3 at 1). But Hamlin also testified, in explaining why no footage was available, that video surveillance is automatically wiped every 14 or 30 days. (Doc. 35 at 44). It would seem an unlikely possibility, then, to review 70 days on one occasion. A reasonable jury could conclude that this calls into question the veracity of Hamlin's statements regarding whether such a review occurred and, crucially, whether the infractions occurred.

Further, by Hamlin's account, he became aware of Plaintiff's purported practice of violations in May of 2018. (Doc. 29-3 at 1). But he neither admonished her nor alerted anyone until July of 2018, and even then only for the purpose of requesting her proposed removal. (Doc. 35 at 61; Doc. 41-2 at ¶ 2; Doc. 28-6). Instead, Hamlin allowed the practice to continue for an additional two months. "As notifying [an employee] of [her] mistakes immediately would logically be the best way to prevent them from being repeated, a reasonable jury could conclude that this failure suggests that [asset protection] was not truly the motivating factor behind [Hamlin's] actions[.]" *Pastura*, 2012 WL 6738660, at *8.

Moreover, Hamlin neither discussed with nor disciplined Polce for the purportedly noncompliant cash handling practice. As Canteen Chief and Plaintiff's first-level supervisor, Polce had set the cash handling policies for the Cincinnati Canteen and was ultimately responsible for Plaintiff's conduct. (Doc. 39 at 23-25, 39).

10

Given the foregoing, Plaintiff has produced sufficient evidence from which a jury could reasonably reject Defendant's first proffered reason as pretext.

### 2. Reason 2: Failure to adhere to retail operation policies

Plaintiff argues that Defendant's second proffered reason—that Plaintiff failed to adhere to retail operation policies—was insufficient to warrant her termination and had no basis in fact. (Doc. 42 at 9-12).

According to the Proposed Removal Letter, Defendant's basis for this second charge was Plaintiff's failure to complete an action list of "operational discrepancies" that had been identified by Hamlin during a June 22, 2018 site visit ("Action Plan"). (Doc. 29-3 at 1). But Associate Claypool testified that when a particular canteen is not following standards, the Canteen Chief, *i.e.*, Polce, would be the employee to be counseled (Doc. 38 at 31), and indeed, Plaintiff testified that when Hamlin drew up the Action Plan, he gave the document to Polce (Doc. 26 at 81).

Furthermore, Polce attested that he and Plaintiff worked a substantial number of hours, including over the weekend, to address the Action Plan before he left on medical leave, and that all items were substantially addressed before he took his leave. (Doc. 41-2 at ¶ 6). And again, although Polce was Canteen Chief and thus ultimately responsible for the Cincinnati location, he was neither terminated nor disciplined for the purportedly incomplete Action Plan. (Doc. 42 at 10). Moreover, this is consistent with Executive Director Leahy's testimony that a messy, incorrectly stocked, or understocked store is unlikely to have yielded a disciplinary action, as it was more of a performance issue. (Doc. 39 at 26-27, 42-43). A reasonable jury could conclude that this again calls

11

into question the veracity of Hamlin's statements—this time with respect to the completeness of the Action Plan.

Given the foregoing, Plaintiff has produced sufficient evidence from which a jury could reasonably reject Defendant's second proffered reason as pretext.

### 3. *The Reprimand Letter*

Although Defendant does not raise the Reprimand Letter as a "legitimate non-discriminatory reason," it focuses almost exclusively on it in its reply, so the Court addresses it here.

Following the charges, Plaintiff's Proposed Removal Letter states that "[her] previous disciplinary records will be taken into consideration[,]" including the Reprimand Letter dated April 5, 2017. (Doc. 29-3 at 1). According to Associate Director Claypool and Executive Director Leahy, the Reprimand Letter factored into their decision to terminate Plaintiff. (Doc. 38 at 97; Doc. 39 at 43).

The Reprimand Letter appears to be a reprimand decision from Polce to Plaintiff, but neither Polce nor Plaintiff has signed it. (Doc. 29-9 at 2). Indeed, Plaintiff testified she was never given the letter and Polce testified he had neither written nor seen the letter. (Doc. 26 at 153; Doc. 22-7 at 83). Moreover, Associate Director Claypool testified it was usual practice to deliver a copy of the reprimand to the employee and for the manager and employee both to sign the reprimand. (Doc. 38 at 99-100). Claypool further testified that VCS had not received a signed copy of the Reprimand Letter, and that this concerned her. (Doc. 38 at 99-100). A reasonable jury could conclude that this

12

calls into question whether the Reprimand Letter was written and submitted at the time of its date, and whether the infractions described within it occurred.

Perhaps recognizing the issues with the Reprimand Letter, Defendant argues that because Plaintiff submitted other replies to the Proposed Removal Letter, had she had something to say with respect to the Reprimand Letter, *e.g.*, that she believed she had never received it, she would have raised it in her reply. (Doc. 43 at 5). Defendant further argues that Plaintiff "implicitly address[es] the allegations of the Reprimand" in her reply to the Proposed Removal Letter; however, Defendant provides no further explanation on how Plaintiff "implicitly addresses" the Reprimand Letter. (Doc. 43 at 5). Indeed, the Court found no reference, implicit or otherwise, to the Reprimand Letter or the related conduct in Plaintiff's reply to the Proposed Removal Letter. (Doc. 35-4). And, in any case, the Court will not consider such speculation over a clear dispute of fact between the parties.

### 4. *Ageist Comments*

In addition to rebutting the reasons proffered by Defendant, Plaintiff points to other circumstantial evidence to support pretext, specifically comments made by Hamlin prior to her termination and related to Plaintiff needing to retire. (Doc. 42 at 12). "[D]iscriminatory remarks can constitute probative evidence of pretext." *Pollard v. Alsco, Inc.*, 2011 WL 1595147, at *5 (S.D. Ohio Apr. 27, 2011) (citing *Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 393 (6th Cir. 2009). "This is true even when the remarks are made by a non-decisionmaker or when they fail to coincide precisely with the particular time frame surrounding the events giving rise to the claim." *Id.*

13

Plaintiff points to two conversations between Polce and regional managers that she contends tend to support pretext. The first conversation included Polce and Regional Managers Charles Doyle and DeWayne Hamlin, and occurred in early 2018. (Doc. 30-1 at ¶ 42). In that conversation, Doyle asked Polce if he had heard any information about Plaintiff retiring; Polce replied that he had not, and that Plaintiff had not discussed retirement with him; and Hamlin replied, "Well, not on his watch, that she needed to retire." (*Id.* at ¶ 43).

A second conversation subsequently occurred between Polce and Hamlin in March of 2018. (*Id.* at ¶ 44). During that conversation, Hamlin told Polce to document Plaintiff's activities so he could create a basis for termination. (Doc. 41-2 at ¶ 4). In exchange, Hamlin promised to offer Polce a job in "paradise," which Plaintiff explains is the term used when Defendant offers a transfer to an ideal location. (*Id.*; Doc. 42 at 12).

Defendant disputes Plaintiff's evidence of ageist comments, arguing that the inquiry into Plaintiff's retirement was undisputedly made by Doyle, who had no managerial authority over Plaintiff's employment at the time of her termination. (Doc. 30 at 5). True, an "inquiry" into whether an employee is retiring may not itself be discriminatory. But Plaintiff does not argue that it is. Rather, it is Hamlin's response that "she needed to retire" (*id.* at 4) that Plaintiff argues a reasonable jury could interpret to be directed toward Plaintiff's abilities based on her age. (Doc. 42 at 12). And, particularly in light of the other evidence presented by Plaintiff, the Court agrees.

"Courts should be cautious in granting . . . summary judgment on discrimination claims when the plaintiff has made a *prima facie* case and a showing of pretext because

14

'an employer's true motivations are particularly difficult to ascertain, thereby frequently making such factual determinations unsuitable for disposition at the summary judgment stage.'" *Willard*, 952 F.3d at 810 (quoting *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 564 (6th Cir. 2004)).

Here, Plaintiff has raised sufficient material factual disputes such that a reasonable jury could find Defendant's proffered reasons were pretextual. The disputes as to why Plaintiff was ultimately terminated will require credibility and weight determinations, which are functions of a jury, not this Court. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Accordingly, Defendant's motion for summary judgment must be denied.

### IV. CONCLUSION

Based upon the foregoing, Defendant's motion for summary judgment (Doc. 30) is **DENIED**.

**IT IS SO ORDERED.**

Date: 3/9/2023

*s/Timothy S. Black*
Timothy S. Black
United States District Judge